UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTOINE B. DARDEN,

                **Plaintiff,**

v.

                                        18-CV-349

COMMISSIONER OF SOCIAL SECURITY,

                **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 16. Antoine B. Darden ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 13, 14.

## BACKGROUND

On October 20, 2014, Plaintiff protectively filed for SSI and DIB, alleging that he became disabled on July 31, 2014, due to ulcerative colitis, ileostomy complications, urological problems, and herniated disc in his neck and back. Tr. at 141-

54, 172.[1] Plaintiff's application was denied at the initial level and he requested review. Tr. at 70-76.[2] On December 15, 2016, Administrative Law Judge David J. Begley ("the ALJ") conducted a hearing. Tr. at 36-42. Plaintiff failed to appear. Tr. at 36-42. Plaintiff's attorney, who was present, indicated that Plaintiff had not responded in recent weeks to his office's attempts to contact him. Tr. at 11, 37. The ALJ proceeded with the hearing, taking testimony from an impartial vocational expert ("VE"), and issued a Notice to Show Cause for Failure to Appear to Plaintiff. Tr. at 11. On January 12, 2017, the ALJ issued a decision, in which he found that Plaintiff was not disabled and therefore not eligible for benefits. Tr. at 8-22. The Appeals Council denied Plaintiff's request for review making the ALJ's determination the final decision of the Commissioner. Tr. at 1-6. Plaintiff thereafter commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment,

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

[2] Plaintiff previously applied for disability, once in May 2008 (Title II only) and again in June 2013 (Title II and XVI), but his applications were denied. Tr. at 11.

2

or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.

3

*See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d

1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

### **The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). Preliminarily, the ALJ concluded that Plaintiff had "failed to show good cause for his failure to appear at the hearing." Tr. at 11. At step one, the ALJ found that Plaintiff had worked after his alleged onset date, July 31, 2014, but that his work activity did not rise to the level of substantial gainful activity. Tr. at 14. At step two, he found that Plaintiff had the following severe impairments: chronic ulcerative colitis (status-post surgeries) and degenerative disc disease of the lumbar spine. Tr. at 14. At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving specific consideration to Listings 1.04 (Disorders of the Spine) and 5.00 (Disorders of the Digestive System). Tr. at 15.

5

Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. 404.1567(b) and 416.967(b), except he could not climb ladders, ropes or scaffolds; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; he must avoid hazardous machinery, unprotected heights, and open flames; and he would need ready access to a bathroom, in general proximity of work space. Tr. at 15-21. Continuing to the fourth step, the ALJ found that Plaintiff was able to perform his past relevant work as a Bicycle Assembler and a Retail Clerk as those jobs were generally performed. Tr. at 21. Accordingly, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act from July 31, 2014, through the date of his decision January 12, 2017. Tr. at 22.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 13, 14. Plaintiff contends that "the RFC fails to incorporate the frequency in which Plaintiff required additional breaks for bowel movements" and that "the record shows that Plaintiff had bowel movements that would cause him to be off-task an impermissible amount of time." Dkt. No. 13-1, pp. 17-20. The Commissioner contends that the RFC adequately accounted for Plaintiff's need to take bathroom breaks, and that "[t]here is no evidence that Plaintiff required more breaks than the VE indicated would be tolerated by employers." Dkt. No. 14-1, pp. 17. Having reviewed the record, this Court finds that the RFC is impermissibly vague regarding Plaintiff's need

for bathroom breaks given the severity of his gastrointestinal symptoms, and that this error warrants remand.[3]

**RFC Assessment**

An RFC is defined as "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s) . . . ." SSR 83-10, 1983 WL 31251, at *7 (S.S.A. 1983). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* "The work functions likely to be limited depend on many factors, including the particular limitations and symptoms caused by the claimant's medically determinable impairments." *Lowe v. Colvin*, No. 6:15-CV-06077(MAT), 2016 WL 624922, at *5-7 (W.D.N.Y. Feb. 17, 2016) (considering claimant's colitis and irritable bowel syndrome). "As explicitly stated in the regulations, RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision." *Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing 20 C.F.R. § 404.1513(c) and (d)(3)).

---

[3] Plaintiff advances other arguments but because this Court finds that remand is warranted on this basis, it need not reach them.

7

The record establishes that Plaintiff suffers from chronic ulcerative colitis with symptoms of severe abdominal and rectal pain and blood in his stool. Tr. at 345-56. Several doctors were involved in his treatment and care. In 2013, Plaintiff was twice treated in the emergency room for his symptoms (Tr. at 345-56, 364), and twice admitted to the hospital for several days for what his pain specialist, Dr. Eugene Gosy, described as "severe intractable abdominal pain" resulting from "aggressive ulcerative colitis." Tr. at 492-94, 495-96. In 2014, Plaintiff consistently reported having more than 12 bowel movements a day, occasionally up to 15 to 20 times a day, with bloody stool. Tr. 570, 688, 571-72, 573. Plaintiff visited the emergency room in May 7, 2014, with fever, bloody stools, and abdominal and rectal pain. Tr. at 372-88. His symptoms flared once again om July 30, 2014, resulting in another emergency room visit. Tr. at 421. Plaintiff's weight fluctuated from day to day, sometimes by several pounds over a matter of days. See Tr. at 345 (230 pounds on June 7, 2013); Tr. at 598 (220 pounds on January 28, 2014); Tr. at 687 (224 pounds on January 30, 2014); Tr. at 428-29 (218 pounds on June 17, 2014, noting that he had lost three pounds since last visit); Tr. at 600 (212 pounds on May 3, 2014).

After Plaintiff failed to respond to conservative treatment, he underwent surgery which consisted of a total proctocolectomy, ileoanal J-pouch and diverting loop ileostomy on August 5, 2014. Tr. at 431, 466, 504, 518-20, 521-26. Following his surgical discharge, Plaintiff developed sepsis from his abdominal wound, which required him to be readmitted to the hospital. Tr. at 466. On October 5, 2014, Plaintiff was treated in the hospital for abdominal pain, fever, and chills. Tr. at 550-59. At that time,

he weighed 200 pounds, his lowest documented weight. Tr. at 550-59. On January 12, 2015, Plaintiff underwent ileostomy closure. Tr. at 622, 637. In March 2015, Plaintiff reported to his surgeon that he was having 4-6 bowel movements a day. Tr. at 639-40. Plaintiff was treated for ulcerative colitis symptoms, including anal burning, on April 15, 2015 and April 27, 2015. Tr at 633, 638, 640. Plaintiff underwent a flexible sigmoidoscopy on May 13, 2015. Tr. at 655.

On May 26, 2015, Plaintiff treated in the emergency room with rectal pain, blood in his stool, and abdominal pain. Tr. at 651. Plaintiff reported to his surgeon on September 28, 2015, that he was having 6-10 bowel movements per day, anal burning and anal pain with bowel movements. Tr. at 671. He was instructed to have Sitz baths three times a day after bowel movements. Tr. at 671. Plaintiff visited the emergency room again for worsening rectal and abdominal pain in September 28, 2015, and for abdominal pain and bloody/tarry stools on October 1, 2015. Tr. at 740-52. On October 6, 2015, Dr. Timothy Adams noted that "since having the reversal of the ileostomy[,] he has had 12 bowel movements a day and he has suffered with anal pain and discomfort as well as bright red bleeding." Tr. at 775. Upon exam, Dr. Adams noted that Plaintiff's perianal ski was excoriated and tender to palpation. Tr. at 776.

An October 30, 2015, CT scan revealed that Plaintiff had a ventral hernia (likely related to the prior ileostomy site) with a loop of small bowel projecting into the hernia sac. Tr. at 716. Further findings from the CT were consistent with "persistent inflammation from ulcerative colitis." Tr. at 716. On November 2, 2015, it was noted

that Plaintiff had undergone a Botox injection at the anal sphincter muscle. Tr. at 696. At that time, Plaintiff reported having more than 12 bowel movements a day, sometimes with blood. Tr. at 696. On November 16, 2015, Plaintiff went to the emergency room with complaints of abdominal pain and nausea. Tr. at 732. He visited the emergency room again on December 22, 2015, with right lower quadrant abdominal pain over the site of his incisional hernia. Tr. at 707-10, 773. Plaintiff had severe tenderness over the hernia defect, and report that he "usually has approximately 15 bowel movements per day but today only had 9-10." Tr. at 707, 709.

      Plaintiff underwent laparoscopic repair of the hernia on January 22, 2016. Tr. at 705-06. After treating with several doctors, he was referred to Cleveland Clinic to get another opinion related to his chronic rectal pain. Tr. at 795. Throughout September 2016, Plaintiff treated with Dr. Adams for poor appetite, unintentional weight loss, nausea, vomiting, diarrhea, chronic rectal pain, and chronic rectal bleeding. Tr. at 792-93. Plaintiff reported loose stools with mucus discharge, and upon examination, had perianal excoriation which was tender to palpation. Tr. at 790. According to the last record related to Plaintiff's colitis treatment from September 27, 2016, Dr. Adams noted that Plaintiff may suffer from Crohn's disease. Tr. at 790.

      The ALJ purported to accommodate Plaintiff's well-documented gastrointestinal symptoms in the RFC by stating that Plaintiff "would need ready access to a bathroom, in general proximity of work space." Tr. at 15. This Court finds that this accommodation is impermissibly vague and does not account for the functional

limitations caused by Plaintiff's ulcerative colitis. As an initial matter, the ALJ failed to make specific findings regarding the frequency and length of Plaintiff's anticipated bathroom breaks. In this regard, the ALJ failed to consider whether Plaintiff's bathroom use was compatible with ordinary, acceptable breaks in terms of frequency and duration or if it would be too frequent to be acceptable, i.e., if it would cause him to be off-task or away from his workstation too often. *Lowe,* 2016 WL 624922, at *6. This was error. *Canty v. Colvin*, No. 6:14-CV-6713(MAT), 2015 WL 9077651 (W.D.N.Y. Dec. 16, 2015); *see also Spaulding v. Astrue*, 702 F. Supp. 2d 983, 985 (N.D. Ill. 2010) (holding that the ALJ's failure to sufficiently articulate his findings regarding the frequency and duration of claimant's required bathroom breaks precluded meaningful judicial review and required remand); *Compston v. Astrue,* 2:10-CV-828, 2011 WL 4360106, at *11 (S.D. Ohio July 18, 2011) ("Dr. Hartwick opined that Plaintiff would need at least five restroom breaks per day. This number of breaks is more than the usual number of breaks an employer provides to an employee. The ALJ, however, made no specific findings concerning the frequency and duration of Plaintiff's bathroom usage.") (footnotes and citations omitted); *Brueggen v. Barnhart*, No. 06-C-0154-C, 2006 WL 5999614, at *7 (W.D. Wisc. Dec. 15, 2006) (remanding the case for the ALJ to "make a specific finding concerning the frequency and duration of plaintiff's bathroom usage and determine whether, in light of those findings, plaintiff is able to work"); *Green v. Astrue*, No. 3:09-CV-331, 2010 WL 2901765, at *6 (E.D. Tenn. July 2, 2010) (remanding because of "the ALJ's failure to specify precisely how [claimant]'s need for frequent restroom breaks impacted her ability to work").

Moreover, the ALJ's conclusion that Plaintiff could perform his past work as a Bicycle Assembler and Retail Clerk, notwithstanding his frequent need to use the bathroom for long periods of time, contradicts the VE's testimony and the record in general.  The VE explicitly testified that a person of claimant's age, education, work experience and RFC would NOT be able to maintain his past work if he was off task more than 20% of the day in addition to his regularly scheduled breaks.  Tr. at 40.  The VE explained:

> Well, it's my opinion that employers anticipate about 10% of the work shift being nonproductive, but they anticipate that to be intermittent.  So, about one to three minutes every half hour a person might be stretching, taking their eyes off the screen, taking a break, using the restroom, getting coffee, whatever.  And, that's spread out throughout the day, and employers realize that that helps people refresh . . . .  So the 20%, that's excessive, so it's my opinion that that range from ten to 20% would cause an erosion of job numbers until there were no jobs left at 20%.

Tr. at 41.  The record reflects that there were periods of time when Plaintiff had bowel movements that would cause him to be off-task an impermissible amount of time.  For example, Plaintiff reported that during different periods both before and after his surgeries he:  was having 12 bowel movements per day (Tr. 688); was going to the bathroom every hour up to 15-20 times daily (Tr. at 571-72); was having bloody, mucoid stools at least 10 times a day (Tr. at 426); was having 10 bowel movements per day (Tr. at 691); was having diarrhea at least 20 times per day (Tr. at 428); was having persistent diarrhea (Tr. at 430); was going to the bathroom every 2 hours up to 15-20 times per day (Tr. at 573); was having 4-6 bowel movements per day (Tr. at 639, 668, 670); and was having 6-10 bowel movements per day (Tr. at 671).

This frequency and duration of bathroom usage clearly exceeds what an employer would tolerate, according to the VE's testimony. Tr. at 41. Moreover, the ALJ's provision for "ready" access to the bathroom fails to account for the fact that Plaintiff required time to treat his symptoms during the day. As previously noted, Plaintiff was ordered by his doctor to have Sitz baths three times a day after his bowel movements to alleviate his rectal pain. Tr. at 671, 778. Under the circumstances, I find that the RFC, which indicates only that Plaintiff would need "ready" access to a bathroom, is impermissibly vague. This matter is therefore remanded to the Commissioner to make specific findings concerning the frequency and duration of plaintiff's bathroom usage and to determine whether, in light of those findings and the VE's testimony, Plaintiff is able to work.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is hereby GRANTED insofar as it seeks remand, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is DENIED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
          September 18, 2019

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.
                                        United States Magistrate Judge**